**IN THE UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JESSE CROOKES | : | |
| 217 Belford Place, | : | |
| Vacaville, CA 95687 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.:_____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| SILK ROAD TRANZ, INC. | : | |
| 3008 State Rd. | : | |
| Bensalem, PA 19020 | : | |
| and | : | |
| NAZ "NICOLE" NAZAROVA | : | |
| 3008 State Rd. | : | |
| Bensalem, PA 19020 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Jesse Crookes (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Silk Road Tranz, Inc. and Naz "Nicole" Nazarova (hereinafter "Defendants," if referred to collectively) of Pennsylvania common law (wrongful termination from employment in violation of public policy) and the Pennsylvania Wage Payment and Collection Law ("WPCL" - 43 P.S. §§ 260.1 *et. seq*.). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      Plaintiff resides in and is a citizen of California.

3.      Defendant Silk Road Tranz, Inc. (hereinafter, "SRT," if referred to individually), is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in same, rendering it a citizen of Pennsylvania.

4.      Defendant Naz "Nicole" Nazarova (hereinafter, "Nazarova," if referred to individually), upon information and belief resides in and is a citizen of Pennsylvania.

5.      This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of California; Defendants are citizens of Pennsylvania; and the amount in controversy exceeds $75,000.

6.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

7.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **PARTIES**

8.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.      Plaintiff is an adult individual with an address as set forth in the caption.

10.     SRT operates as a trucking and logistics company at the above-captioned address. This entity is headquartered and operates from Bucks County, Pennsylvania.

11.     Nazarova is a high-level operations management of SRT.

12.    At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **FACTUAL BACKGROUND**

13.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.    Plaintiff was hired as a full-time (CDL) truck driver for SRT on or about October 31, 2024; and in total, worked for SRT for almost five (5) months before being terminated.

15.    Nazarova was the person who primarily supervised Plaintiff, and she was referred to as both a "Supervisor" and "HR Manager" of SRT.

16.    James (last name unknown) was Plaintiff's primary dispatcher; Tim Smith was the "Safety Coordinator;" Mary El Nasser is an individual within management; and Nosirov Shokhrukh is identified as a carrier contact person in public filings. For reasons set forth *infra*, it is unclear if these are full or real names.

17.    Plaintiff was terminated by SRT effective on or about March 21, 2025, for bbjecting to and/or refusing to engage in unlawful activities.

18.    In January of 2025, Plaintiff filed a complaint with the United States Department of Transportation ("DOT"), Federal Motor Carrier Safety Administration ("FMCSA"). Plaintiff's complaint was acknowledged in a letter dated January 27, 2025 as follows:



U.S. Department of Transportation
Federal Motor Carrier
Safety Administration

Pennsylvania Division
215 Limekiln Road, Suite 200
New Cumberland, PA 17070

Complaint ID: 100282780
1/27/2025

Jesse Crookes
217 Belford Pl,
Vacaville, CA 95687

Dear Mr. or Ms. Jesse Crookes:

Thank you for your 01/27/2025 complaint alleging noncompliance of SILKROAD TRANZ INC. This letter confirms receipt of your correspondence. Your complaint number is 100282780. Please refer to this number when submitting additional information or checking on the status of your complaint. To check on the status of your complaint, contact the Pennsylvania Division Office at 717-614-4060.

19.    According to DOT regulations (and, in particular, 49 C.F.R. Part 395):

a) A driver can only be on duty for a maximum of 14 hours after taking 10 consecutive hours off duty. This is the window within which driving and other on-duty activities are permitted.

b) Within the 14-hour window, a driver can only drive for a maximum of 11 hours. After reaching 11 hours of driving, they must take 10 consecutive hours off duty before driving again.

c) Except for short-haul exceptions, a driver cannot drive more than 8 hours without a consecutive 30-minute interruption in driving status. This interruption can be off-duty, in the sleeper berth, or on-duty not driving.

20.    SRT did not care about the safety of those on roadways or drivers of its own company. SRT only cared about threatening its drivers to keep making money while falsifying driving information and records (knowingly violating Section 395).

a) Trucks had an Electronic Logging Device ("ELD"). These devices automatically record a driver's hours of service ("HOS"), ensuring compliance with regulations set by the FMCSA. *SRT was intentionally manipulating and resetting the ELD falsely* (a violation of 49 C.F.R. 395.30, among other laws).

b) SRT was inputting or forging Plaintiff's signature on ELD records (a violation of 18 U.S.C. § 471, among other laws).

    c) SRT was requiring Plaintiff to drive for extended periods of time beyond what is legally permitted under federal regulations wherein he was tremendously sleep deprived and at risk for causing serious bodily injury or death on public roadways (a violation of 49 C.F.R. § 392.3, among other laws).

    d) SRT: (a) threatened to terminate; (b) threatened call the police on Plaintiff for a welfare check or to report truck theft if he took breaks or slept; and (c) threatened to withhold compensation of Plaintiff if he did not drive without adequate rest.

21.    In his January 27, 2025, complaint to the DOT and FMCSA, Plaintiff complained that Defendants' Uzbekistan personnel (who, upon information and belief, were not even authorized to work in the United States) were using fake names to operate a shell business based in Bensalem, PA. Plaintiff selected allegations from a dropdown menu to complain about including but not limited to:

## Selected Allegations

| Type | Category | Allegation |
| --- | --- | --- |
| Truck Safety | Hours of Service | Company requires that driver falsify log books. |
| Truck Safety | Hours of Service | Company requires that the driver exceed maximum driving time allowed by regulation. |
| Truck Safety | Hours of Service | Company requires driver to drive without taking the proper off-duty period. |
| Truck Safety | Unsafe Vehicles or Equipment | Commercial truck did not have required equipment. |
| Truck Safety | Unsafe Vehicles or Equipment | Commercial truck did not perform proper inspection, repair and maintenance. |
| Truck Safety | Unsafe Vehicles or Equipment | Carrier placed a commercial truck into operation without one or more parts/accessories necessary for safe operation as defined under Part 393. |
| Truck Safety | Unsafe Vehicles or Equipment | Carrier failed to correct Out-Of-Service defects listed by driver in a driver/vehicle inspection report before the vehicle is operated again. |
| Truck Safety | Harassment for Refusal to Commit an Hours of Service Violation | I was harassed by my motor carrier employer based on information that my employer accessed through an Electronic Logging Device (ELD) or related technology that resulted in me violating the hours of service rules of the Federal Motor Carrier Safety Regulations. |
| Coerced to Commit a Violation | Coerced to Commit a Violation | I was coerced to commit a violation related to Hours of Service. |
| Coerced to Commit a Violation | Coerced to Commit a Violation | I was coerced to commit a violation related to Vehicle Condition or Maintenance. |
| Coerced to Commit a Violation | Coerced to Commit a Violation | I was coerced to commit a violation related to ill or fatigued operations. |
| Coerced to Commit a Violation | Coerced to Commit ELD Violation | I was coerced to falsely certify my ELD records. |

22.    In numerous communications directly to SRT's personnel and management (before **and** after his aforesaid agency complaints), Plaintiff was making similar complaints.

23.    Plaintiff was expressing serious concerns about how unsafe his truck was as well as that he was required to drive.

24.     In or about January of 2025, Plaintiff had even felt compelled to stop for an inspection, as he believed that the vehicle he was driving (and was assigned to) was too unsafe to legally operate. SRT had claimed that the vehicle was fine *and refused to make any repairs*.

25.     As a result of the inspection, SRT was cited with approximately 8-9 (statutory) violations of laws for the vehicle being so unsafe (such as brake problems, oil leaks, and tires being so unsafe there was an absence of thread and the metal belts in the tires were coming through).

26.     Getting the inspection required the vehicle to be taken out of service **unless** such repairs were made. Plaintiff explained to SRT management that he undertook the inspection because of SRT's attempt to force him to drive an unsafe vehicle on public roadways and to corroborate his concerns of driving unlawfully on roadways. This of course resulted in animosity towards Plaintiff for making SRT look bad.

27.     In late March 2025, Plaintiff was informed that *as a condition of him remaining employed*, he had to "withdraw" his FMCSA complaints immediately. In a telephone conversation on or about March 24, 2025, Plaintiff refused to withdraw his FMCSA complaints.

28.     Plaintiff was informed in this 3/24/25 conversation that SRT then would fight his complaints and that his actions had been "hurting [SRT] financially for over a month."

29.     Nazarova then promptly sent Plaintiff the following message:

**[Remainder of page intentionally left blank.]**



30.    It appears that SRT has actually admitted to unlawful retaliation by claiming that Plaintiff's termination was due to the fact that he had his truck inspected which caused violations upon SRT's record.

31.    However, the only reason(s) why Plaintiff had the vehicle inspected was because: (a) it was too unsafe to drive; (b) its condition violated state laws; and (c) SRT refused to engage in any remedial repairs. Hence, Plaintiff had to have the vehicle inspected to ensure that he complied with applicable laws and to avoid catastrophic injuries or death to those on roadways.

32.     Plaintiff has a proverbial mountain of evidence of illegality and wrongful termination. By way of examples, Plaintiff has video footage which illustrates resets of electronic logs which required Plaintiff to unlawfully drive without adequate rest (or federally-mandated breaks); fuel receipts which show non-stop driving in violations of federal law(s); screenshots of messages; and other evidence.

33.     Plaintiff refused to withdraw his FMCSA complaints and refused to continue operating unlawfully maintained vehicles (with the potential to cause serious injury or death on roadways). As a result, Plaintiff was terminated retaliatorily.

34.     It is well established that Plaintiff may sue Nazarova <u>individually</u> (as to her personal assets) for participation in a tort because Nazarova directly caused, directed, and perpetuated all actions in this lawsuit as outlined.[1]

35.     It is well established that a Plaintiff may sue civilly for common-law wrongful termination for refusal to commit crimes or unlawful conduct as outlined in this very lawsuit. *See e.g., Cartwright v. SCA Packaging N. Am., LLC*, 81 Pa. D. & C.4th 115, 120, 2007 Pa. Dist. & Cnty. Dec. LEXIS 87 (Ct. Comm. Pls. 2007) (denying summary judgment and explaining it constitutes common law wrongful termination where an employee refuses to operate a commercial motor vehicle in violation of trucking regulations).

---

[1] It is well established that corporate officers and high-level management are liable for torts in Pennsylvania in which they participate. In *Rowles v. Automated Prod. Sys.,* 1999 U.S. Dist. LEXIS 21605 (M.D. Pa. 1999), the court explained **any** corporate officer is individually liable for their tortious actions, stating:

> In *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86, 90 (Pa. 1983), the Pennsylvania Supreme Court recognized the participation theory as a basis for ***corporate officer liability***:
>
> Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

> *Id.* at * 43.

8

36.     Plaintiff's objections to operation of Defendants' vehicles were objections to many statutory violations of vehicle safety (some of which carry criminal sanctions – *see e.g.,* 49 U.S.C. § 521(b)(6)). Not only does the Commonwealth prohibit common law wrongful discharge for refusal to operate unlawful vehicles, so do other states addressing similar fact patterns.[2]

37.     In addition to being unlawfully terminated, Defendants also violated the WPCL. At the outset, Plaintiff was improperly misclassified by Defendants as an independent contractor, when Plaintiff was, in all aspects, an employee.

38.     SRT operates a very unscrupulous enterprise. To avoid taxes, wage compliance, and other state and federal requirements, SRT intentionally knowingly misclassifies "employees" as "independent contractors."

39.     Plaintiff had been required to sign a form indicating that he would work as an "independent contractor" upon hire. However, **nobody** could or would ever believe he was actually an independent contractor.

40.     In a lawsuit filed by SRT in 2024 (within the Eastern District of Virginia – Docket No.: 24-CV-13), **SRT represented in its own lawsuit** against a different business that it employed 28 drivers, who operated its 28 trucks. During his employment, Plaintiff:

---

[2] *See e.g. Lepore v. Nat'l Tool & Mfg. Co.,* 224 N.J. Super. 463, 473, 540 A.2d 1296, 1301 (App. Div. 1988), aff'd, 115 N.J. 226, 557 A.2d 1371 (1989) ("we think it evident an at-will employee would have an available tort remedy for a retaliatory discharge for reporting workplace safety violations."); *Lilly v. Overnight Transp. Co.,* 188 W. Va. 538, 425 S.E.2d 214 (1992)(Allowing Plaintiff to proceed with wrongful discharge claim when employee was discharged from employment in retaliation for refusing to operate motor vehicle with brakes that were in such unsafe working condition that operation of vehicle would create substantial danger to safety of public because state statutes existed regulating brakes, making it misdemeanor to drive unsafe vehicle and providing for promulgation of safety rules and regulations applicable to motor vehicles.); *Moyer v. Allen Freight Lines, Inc.,* 20 Kan. App. 2d 203, 210, 885 P.2d 391, 396 (1994)(public policy exception for wrongful discharge of at-will employee existed where employee reported equipment failure on the trucks she drove for Defendant, as "the public policy of protecting employees from retaliatory discharge is to ensure that infractions of rules, regulations, or laws pertaining to public health and safety are properly reported" and the purpose of DOT regulations is to ensure the safety and general welfare of the public by requiring all trucks on public highways meet certain minimum safety requirements.); *Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d 822 [ (Tenn.1994) ] (upholding a verdict in favor of truckers claiming retaliatory discharge for refusing to drive uninspected trucks in violation of federal and state laws without considering whether the truckers reported their employer's illegal activity). *Rose v. Anderson Hay & Grain Co.,* 184 Wash. 2d 268, 287, 358 P.3d 1139, 1147 (2015) (public policy exception for wrongful termination where Plaintiff was terminated because he refused to falsify his drive log and drive in excess of the federally mandated limit).

a) Was paid weekly on a paystub (as employees are typically paid weekly);

b) Was assigned a truck possessed or owned by SRT to operate, as Plaintiff was not an owner-operator, did not have his own business, and did not have any trucks of his own;

c) Was issued, given, and assigned all equipment to use by SRT for his job;

d) Was given a full-time work schedule, and Plaintiff did not work elsewhere relying on his full-time income and weekly paychecks from SRT;

e) Was required per documentation to return company equipment upon termination;

f) Was required to give no less than 2 weeks' notice before ceasing work for SRT per documentation given to him;

g) Was directed daily on scheduling, where to show up, what time to deliver, and how to handle transport (each day and throughout each day); and

h) Performed the role of an "employee" in every respect via a truck provided by SRT that it owned or possessed with an anticipated indefinite full-time work schedule (if not terminated for objecting to illegalities).

41.    In addition to the foregoing, Plaintiff applied for a job with SRT as would any typical employee responding to a job posting on Indeed. The job posting reflected as follows:

## CDL A Truck Driver - OTR

Silkroad Tranz

### Full job description

Job Description:

*OUR OTR TRUCK DRIVERS EARN UP TO $2,800 PER WEEK - UP TO 28% OF THE LOAD - WE ALLOW YOU TO TAKE YOUR TRUCK AND TRAILER HOME!*

*We are seeking safe, professional, and experienced drivers looking for a company to call home. Together, we bring the best the transportation industry has to offer. As a driver for an industry leader, you'll enjoy exceptional equipment, technology, safety practices, over-the-road support, and service.*

**What We Offer Our Truck Drivers:**

- $1,800 - $2,800 Per Week
  Start at 26% of the Load
- ○ Increase to 28% After 6 Weeks

- Paid Every Week - Every Tuesday!
  3 Weeks Out - 3 Days Home

42.    The DOT published a final rule, effective March 11, 2024 regarding the independent contractor versus employee analysis. All six (6) factors weigh in favor of concluding that SRT falsely identified Plaintiff as an "independent contractor."

43.    In reality, SRT merely calls an employee a "contractor" in some documents but treats them as an employee in all other respects (to in rip them off with varying penalties and deductions and to avoid state and federal laws). This simply is not a close call as to misclassification. *See also e.g. Prokhorov v. IIK Transp., Inc*., 2024 U.S. Dist. LEXIS 140217, at *23 (N.D. Ill. 2024) (granting judgment to class of truck drivers where court explained a truck driver must be deemed an "employee" if they perform work in a trucking company's "usual course of business").

44.    During Plaintiff's employment, Defendants failed to reimburse Plaintiff for legitimate business expenses such as insurance, and improperly "escrowing" Plaintiff's earned

wages, which was ostensibly to cover the cost of retrieving Plaintiff's truck, in the event his employment was terminated.

45.    During Plaintiff's employment, Defendants engaged in unlawful deduction of Plaintiff's wages, in improperly withholding money from Plaintiff's pay for insurance, and other costs.

46.    Defendants did not have written authorization from Plaintiff to withhold, divert or deduct any portion of his wages for the aforementioned items.

47.    None of the aforementioned deductions are "Authorized deductions," within the meaning of 34 Pa. Code § 9.1, and Defendants were not permitted to make these deductions.

48.    Defendants' actions as aforesaid constitute unlawful withholding under the WPCL.

**Count I**
**Violations of Pennsylvania Common Law**
**(Wrongful Discharge)**
**- Against Both Defendants –**

49.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.    It is clearly prohibited in this Commonwealth to terminate an employee for refusing to commit criminal acts. *See. e.g. Levito v. Hussman Food Service Co. Victory Refrigeration Div.*, WL 1426 (E.D. Pa. 1990); *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3rd Cir.1988); *Shaw v. Russel Trucking Line, Inc.,* 542 F.Supp. 776 (W.D.Pa.1982); *Dugan v. Bell Tel. of Pennsylvania,* 876 F.Supp. 713, 725 (W.D.Pa.1990).

51.    Plaintiff was terminated **for both:** (a) refusing to engage in unlawful or criminal actions; and (b) for reasons that comprise public policy prohibiting termination in this Commonwealth.

52.    Plaintiff was unlawfully terminated for his refusal to engage in criminal acts at the direction of Nazarova. Nazarova, as named in the caption of the Complaint, is a high-level manager

who participated and ratified the decision to terminate Plaintiff's employment – which makes her individually liable herein.

53.     Defendants' termination of Plaintiff therefore constitutes a violation of the Commonwealth of Pennsylvania's common law protections.

**Count II**
**Violations of the Pennsylvania Wage Payment and Collection Law ("WPCL")**
**(Non-payment of full wages / Unlawful Wage Retention)**
**- Against Both Defendants –**

54.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.     The WPCL provides that an employer is obligated to pay all wages due to its employees, without any unauthorized or unlawful deductions. *See* 43 P.S. § 260.3.

56.     The deduction from Plaintiff's pay for insurance and the aforementioned "escrowing," constitute "wages" under the WPCL. 43 P.S. § 260.1.

57.     At all relevant times as alleged herein, Plaintiff was employed by Defendants within the meaning of the WPCL.

58.     By illegally deducting and converting Plaintiff's wages to their own benefit, as well as mandating the other deductions described in this action, Defendants intentionally failed to pay the wages due for all work performed as set forth in this Complaint, in violation of 43 P.S. § 260.3.

59.     Defendants were not permitted by state or federal law, or by an order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiffs' wages that concern this lawsuit.

60.     Pursuant to 43 P.S. §§ 260.9 and 260.10, employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

13

61.     Due to Defendants' violation of the WPCL, Plaintiff is entitled to all unpaid wages, liquidated damages, plus attorneys' fees and costs.

62.     Defendants' actions as aforesaid constitute unlawful withholding under the WPCL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: June 5, 2025

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Jesse Crookes | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Silk Road Tranz, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (x )

| | | |
|---|---|---|
| 6/5/2025 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?      Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?           Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*
      _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

10/2024

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CROOKES, JESSE

**DEFENDANTS**

SILK ROAD TRANZ, INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff  Solano
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | mployment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
PA Common Law and the PA Wage Payment and Collection Law.

Brief description of cause:
Violations of the PA Common Law and the PA Wage Payment and Collection Law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   6/5/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____